UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

TRACY D. TUCKER,                                                      CASE NO. 12-13604-NPO

DEBTOR.                                                                          CHAPTER 13

MEMORANDUM OPINION AND ORDER
DENYING THE MOTION TO MODIFY CHAPTER 13 PLAN

This matter came on for hearing on September 26, 2013 (the "Hearing") on the Motion to Modify Plan (the "Motion to Modify") (Dkt. 18) filed by Tracy D. Tucker (the "Debtor"), the Response of Shreveport Federal Credit Union to Debtor's Motion to Modify Plan (the "Shreveport FCU Response") (Dkt. 20) filed by Shreveport Federal Credit Union ("Shreveport FCU"), and the Trustee's Response to Motion to Modify Chapter 13 Plan (the "Trustee Response") (Dkt. 23) filed by Locke D. Barkley, the chapter 13 trustee (the "Trustee") in the above-styled bankruptcy case (the "Bankruptcy Case"). At the Hearing, Chris F. Powell represented the Debtor, Brittan Webb Robinson represented Shreveport FCU, and G. Adam Sanford represented the Trustee. After hearing arguments, the Court took the matter under advisement. The Court, being fully advised in the premises, finds that the Motion to Modify should be denied for the reasons that follow.

**Jurisdiction**

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Notice of the Motion to Modify was proper under the circumstances.

## Facts

1. On August 29, 2012, the Debtor voluntarily filed the petition for relief (Dk. 1) under chapter 13 of the U.S. Bankruptcy Code and the proposed Chapter 13 Plan (the "Plan") (Dkt. 5).

2. In the Plan, the Debtor listed a "2011 Chevy Camaro" (the "Camaro") as collateral to Shreveport FCU's secured claim valued at $37,246.00. *Id.* at 2. The Plan required the Debtor to pay Shreveport FCU the amount of the secured claim in full. *Id.*

3. On November 16, 2012, the Court entered the Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (the "Confirmation Order") (Dkt. 16) confirming the Plan. The confirmed Plan provided for a one hundred percent (100%) pro rata distribution to timely filed and allowed general unsecured claims. The Confirmation Order provided that "[t]he debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the trustee." *Id.*, ¶ 4.

4. The Debtor claims that on June 18, 2013, while the Camaro was parked at the Memphis Airport, it was damaged by a fire that originated in a neighboring vehicle. The Camaro was impounded by the Memphis Police Department and apparently remains there now. In the Motion to Modify, filed on July 11, 2013, the Debtor seeks to surrender the Camaro and any insurance proceeds to Shreveport FCU in partial satisfaction of Shreveport FCU's secured claim, have any deficiency treated as unsecured, and have her payments decreased accordingly. The Debtor also seeks to pay only $1,751.87 in unsecured claims, the total amount of timely filed and allowed general unsecured claims.

5. In the Shreveport FCU Response, filed on July 26, 2013, Shreveport FCU argues that the Camaro and any insurance proceeds may be surrendered, but any remaining balance due

should remain as a secured claim pursuant to the Confirmation Order and *Chrysler Financial Corp. v. Nolan* (*In re Nolan*), 232 F.3d 528 (6th Cir. 2000).

6. In the Trustee Response, filed on July 26, 2013, the Trustee does not object to any modification of the Plan so long as all allowed general unsecured claims are paid in full in the amount of $2,032.55, a slightly higher amount than what the Debtor claimed as the balance owed.

7. At the Hearing, the Debtor stated that the insurance on the Camaro had lapsed at the time it was damaged by the fire. Shreveport FCU did not oppose the surrender of the Camaro, but argued that there is a good faith requirement for post-confirmation modifications to reclassify claims, which the Debtor did not meet because of her failure to maintain insurance on the Camaro. The Debtor argued that in the interest of fairness, the Motion to Modify should be granted because it was Shreveport FCU's responsibility to make sure the Debtor had insurance. The Debtor did not dispute the Trustee's limitation to the Motion to Modify regarding the $2,032.55 of general unsecured claims.

## Discussion

A confirmed chapter 13 plan is binding on all parties who were involved in the confirmation process. 11 U.S.C. § 1327(a).[1] The Bankruptcy Code, however, allows a debtor, trustee, or unsecured creditor to modify a plan post-confirmation. 11 U.S.C. § 1329. The ability to modify is "based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006). Subsection (a) provides that a plan may be modified to: (1) increase or reduce plan payments on claims of a particular class, (2) extend or reduce the

---

[1] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

time for plan payments, (3) to alter the distribution to a creditor under the plan to account for payments made outside of the plan, or (4) to reduce the amount to be paid under the plan in light of the debtor's purchase of health insurance, subject to certain conditions. 11 U.S.C. § 1329(a)(1)-(4). Section 1329 also sets out some exceptions to the ability to modify a chapter 13 plan post-confirmation. Relevant to this case is the condition that any plan modification must comply with the content requirements of § 1322(a) and (b) and the confirmation requirements of § 1325(a). 11 U.S.C. § 1329(b)(1)-(2). Before addressing whether § 1329 permits the Debtor to modify the Plan to surrender the Camaro and treat any resulting deficiency as an unsecured claim, the Court will review the current landscape of decisions addressing the issue.

**I.      Existing Authority on Post-confirmation Modification to Surrender Collateral**

There is a split among courts regarding a debtor's ability to modify a plan to surrender collateral and treat any deficiency as an unsecured claim. The Sixth Circuit Court of Appeals is the only circuit court that has addressed the issue. In *Nolan*, 232 F.3d 528, the Sixth Circuit held that § 1329(a) does not permit the modification of a confirmed plan to surrender collateral when the modified plan treats the deficiency as an unsecured claim. In the wake of *Nolan*, bankruptcy courts, including those within the Fifth Circuit, have disagreed regarding whether to follow the Sixth Circuit's decision on the issue. The Court will now review the current split in authority.

**A.      *In Re Nolan***

In *Nolan*, a chapter 13 debtor attempted to modify her confirmed plan by surrendering her vehicle and treating the resulting deficiency as an unsecured claim. 232 F.3d 529. According to the debtor, the vehicle no longer provided a reliable form of transportation. *Id.* at 530. The Sixth Circuit refused to allow the debtor to modify her chapter 13 plan for several reasons, including that: (1) § 1329(a) does not explicitly allow a debtor to alter or reclassify an allowed

secured claim, but only allows a debtor to change the amount or timing of payments; (2) such a modification would violate § 1325(a)(5)(B), which requires that an allowed secured claim remain fixed in amount and status, and be paid in full; (3) such a modification would give debtors the ability to shift the burden of depreciation to a secured creditor; and (4) such a modification would create an inequitable situation where a secured creditor would not be able to alter a claim in light of an appreciation of a piece of collateral's value. *Id.* at 532-34. The Sixth Circuit concluded that debtors can never modify a plan under § 1329(a) by surrendering collateral and having any deficiency treated as an unsecured claim. *Id.* at 535. Following *Nolan*, some bankruptcy courts, including two within the Fifth Circuit, have denied motions to modify chapter 13 plans to surrender collateral and reclassify any deficiency as an unsecured claim under § 1329(a). *See In re White*, 370 B.R. 713 (Bankr. E.D. Mich. 2007); *In re Arguin*, 345 B.R. 876 (Bankr. N.D. Ill. 2006); *In re Cameron*, 274 B.R. 457 (Bankr. N.D. Tex. 2002); *In re Coffman*, 271 B.R. 492 (Bankr. N.D. Tex. 2002); *In re Smith*, 259 B.R. 323 (Bankr. S.D. Ill. 2001).

      B.      **Departing From** *Nolan*

A large number of courts, including one Mississippi bankruptcy court, have departed from *Nolan* and have held that there is not a *per se* bar against post-confirmation modification to surrender collateral when the modified plan treats any deficiency as an unsecured claim. *See In re Davis*, 404 B.R. 183 (Bankr. S.D. Tex. 2009); *In re Sellers*, 409 B.R. 820 (Bankr. W.D. La. 2009); *In re Disney*, 386 B.R. 292 (Bankr. D. Colo. 2008); *In re Berendt*, No. 07-35054, 2008 WL 4410995 (Bankr. D. Or. Sept. 22, 2008) (unpublished); *In re Ross*, 373 B.R. 656 (Bankr. W.D. Mo. 2007); *In re Jefferson*, 345 B.R. 577 (Bankr. N.D. Miss. 2006); *In re Marino*, 349 B.R. 922 (Bankr. S.D. Fla. 2006); *Bank One, NA v. Leuellen (In re Leuellen)*, 322 B.R. 648 (S.D.

Ind. 2005); *In re Taylor*, 297 B.R. 487 (Bankr. E.D. Tex. 2003); *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002); *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001). In rejecting the Sixth Circuit's categorical bar, these courts have relied variously on the language of § 1329, a court's power to reconsider a claim under § 502(j), and the claim reclassification effects of § 506(a).

When relying on the language of § 1329, these courts have rejected *Nolan's* strict reading and have concluded that its language permits plan modification to surrender collateral. Specifically, some of the courts have found that such modification is provided for in § 1329(a)(1) because each secured claim is generally treated as a separate class within a plan and a modification to surrender collateral reduces "the amount of payments on claims of particular class provided for by the plan." *See* 11 U.S.C. § 1329(a)(1); *Sellers*, 409 B.R. 820; *Disney*, 386 B.R. 292, *Leuellen*, 322 B.R. 648. Also, some of the courts have found that § 1329(a)(3) provides for a modification that surrenders collateral and treats any deficiency as an unsecured claim because such modification "alter[s] the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." *Sellers*, 409 B.R. at 827; *see Davis*, 404 B.R. 183; *Hernandez*, 282 B.R. 200; *Knappen*, 281 B.R. 714. Once the collateral is surrendered under § 1329, any deficiency is reclassified as an unsecured claim pursuant to § 506(a). *Leuellen*, 322 B.R. at 654-55.

When relying on § 502(j), the courts have concluded that a court's power to reconsider a claim enables a debtor to modify his or her confirmed plan under § 1329 to surrender collateral. *See Zieder*, 263 B.R. 114. According to these courts, a "debtor may use section 502(j) to (1) reduce the creditor's previously allowed secured claim to reflect the value of the collateral that

was surrendered, and (2) re-classify the remainder of the creditor's previously allowed secured claim as an unsecured deficiency pursuant to section 506(a)." *Sellers*, 409 B.R. at 825-26 (citing *Zieder*, 263 B.R. at 117). This ability is restricted, however, by the requirement that both a showing of cause and a consideration of the equities occur before a claim is reconsidered under § 502(j). *Id.* at 829. The reconsideration and reclassification of secured claims provides a basis for a modification to surrender collateral under § 1329. *See Davis*, 404 B.R. at 194-95. In addition to these decisions, one prominent bankruptcy treatise has determined that a chapter 13 plan can be modified to surrender collateral and reclassify any deficiency as an unsecured claim. *See* 8 COLLIER ON BANKRUPTCY § 1329.04[1] (16th ed. 2013) (stating that courts have departed from *Nolan* after "a more careful and complete reading" of the Bankruptcy Code).

II. **Motion to Modify**

    A. **Bankruptcy Code Allows Post-confirmation Modification to Surrender Collateral**

Having reviewed the case law and the relevant provisions of the Bankruptcy Code, the Court is not persuaded by *Nolan's* narrow reading of § 1329(a) and rejects *Nolan's* categorical bar on post-confirmation modifications that surrender collateral and reclassify any deficiency as an unsecured claim. First, the Court finds that a modification to surrender collateral is expressly authorized in § 1329(a)(1) & (3). With respect to § 1329(a)(1), courts generally consider each secured claim to be in a separate class by itself. *Sellers*, 409 B.R. at 826-27 (citations omitted); *Leuellen*, 322 B.R. at 657; Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 264.1 at ¶ 18, Sec. Rev. July 14, 2004, www.Ch13online.com ("[S]ecured claims are each unique and are each provided different treatments under Chapter 13 plans - different interest rates, different values of collateral, different monthly payments and so forth."). Therefore, a modification to surrender collateral that reduces the stream of payments to a secured

creditor to zero falls within the language of § 1329(a)(1). Regarding § 1329(a)(3), a debtor's surrender of collateral to a creditor is a form of payment made to that creditor outside of a plan. As a result, a modification seeking to surrender collateral is expressly authorized in § 1329(a)(3). Therefore, the express language in § 1329, in conjunction with § 506(a), allows a debtor to modify a confirmed plan to surrender collateral and reclassify any deficiency as an unsecured claim.

Second, the Court finds that irrespective of the express language in § 1329(a)(1) and (3), a post-confirmation modification to surrender collateral under § 1329 is allowed pursuant to the Court's power to reconsider a claim under § 502(j). *Nolan* held that once a plan is confirmed, the treatment of a secured claim is fixed and cannot be modified under § 1329. *Nolan*, 232 F.3d at 533. The Sixth Circuit, however, did not consider § 502(j), which permits (a) a claim that has been allowed or disallowed to be reconsidered for cause, and (b) a reconsidered claim to be allowed or disallowed according to the equities of the case. Section 502(j), in conjunction with § 506(a), allows the reconsideration and reclassification of secured claims post-confirmation in situations where collateral is surrendered. *See Sellers*, 409 B.R. at 827-28; *Zieder*, 263 B.R. at 116-17; *Davis*, 404 B.R. at 194-95.

Third, the Court rejects the Sixth Circuit's view that a post-confirmation modification to surrender collateral unfairly shifts the risk of depreciation to creditors. *Nolan*, 232 F.3d at 534 (rejecting "the notion that debtors have such wide latitude to subject the creditor to their whims" over the life of a plan). While the Court agrees that a post-confirmation modification to surrender collateral that unfairly prejudices a creditor should be denied, the reasoning in *Nolan* ignores the statutory safeguards in place that prevent abuses of the modification process. Foremost, the Court notes that secured creditors generally bear some degree of risk that collateral will

depreciate during the life of a plan. The Bankruptcy Code addresses this concern by providing secured creditors with protections designed to lessen their risks, such as the right to receive adequate protection payments pre-confirmation and during the life of the plan, *see Sellers*, 409 B.R. at 828-29; 8 COLLIER ON BANKRUPTCY § 1329.04[1], and the ability to request relief from the automatic stay to repossess collateral. 11 U.S.C. § 362(d)(1). In addition, there are conditions for plan modification under § 1329 and claim reconsideration under 502(j). Section 1329(b)(1) requires any plan modification to comply with the confirmation requirements of § 1325(a), including the requirement under § 1325(a)(3) that the plan be proposed in good faith. Section 502(j) requires a showing of cause and a consideration of the equities of the case before a claim may be reconsidered. Because of § 1329's incorporation of § 1325(a)(3) and the language of § 502(j), unfair prejudice or abuse can be addressed on a case-by-case basis.

Moreover, as a practical matter, a *per se* denial of modifications that surrender collateral and reclassify any deficiency as unsecured contravenes the congressional intent behind § 1329, which was to promote greater success of completing chapter 13 plan payments. H.R. REP. NO. 95-595, at 125 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6086. If the Court imposed a rule that unequivocally denied debtors from modifying confirmed plans by surrendering collateral, then a debtor who legitimately needed to surrender collateral would have difficulty making his or her chapter 13 plan payments. *See Disney*, 386 B.R. 292. For example, under *Nolan's* rationale, debtors who have to surrender their vehicles through no fault of their own would still be required to make payments on the vehicles according to their confirmed plans while attempting to pay for alternative modes of transportation. These situations would most likely result in dismissals or conversions to chapter 7 of the Bankruptcy Code.

In summary, the Court finds that there should not be a *per se* bar on post-confirmation modifications to surrender collateral when the modified plan treats the deficiency as an unsecured claim. Such a rigid rule is unnecessary in light of the statutory safeguards that protect creditors' interests regarding plan modifications under § 1329 and reconsideration of claims under § 502(j). A debtor may modify a confirmed plan to surrender collateral and reclassify any deficiency as an unsecured claim provided the modification is consistent with the requirements of § 1325(a) and § 502(j).

### B. Motion to Modify to Surrender the Camaro and Reclassify the Deficiency Does Not Satisfy § 1325(a)(3)

While the Debtor is not prohibited *per se* from modifying the Plan by surrendering the Camaro, the Debtor is nevertheless precluded from modifying the Plan because she fails to satisfy § 1325(a)(3). As mentioned previously, § 1325(a)(3), which is applied to post-confirmation modification through § 1329(b)(1), requires any plan (or in this case, any modification) to be proposed in good faith. Because the Court finds that the Debtor's proposed modification lacks good faith, it is unnecessary for the Court to determine whether the Debtor's proposed modification to surrender collateral also complies with the § 502(j) requirements of cause and a consideration of the equities of the case.

The court in *Knappen*, 281 B.R. 714, a case outlined by the U.S. Bankruptcy Court for the Northern District of Mississippi in *Jefferson*, 345 B.R. 577, provided an example of a situation in which a proposed modification to surrender collateral would not satisfy the good faith requirement of § 1325(a)(3). According to the court in *Knappen*, "were the debtor to fail to maintain insurance on a vehicle, and then lose the value of the collateral for that reason . . . the motion to modify would probably be denied." 281 B.R. at 720. Other courts explicitly have denied motions to modify confirmed plans to surrender collateral on that ground. *See In re Odlin*,

No. 07-62298, 2010 WL 3791486 (Bankr. D. Or. Sept. 22, 2010) (denying a motion to modify due to lack of good faith after the debtor allowed the car insurance to lapse); *In re Butler*, 174 B.R. 44 (Bankr. M.D.N.C. 1994) (holding that a debtor failed to satisfy the § 1325(a)(3) good faith requirement by failing to maintain collision insurance on the collateral, as required by the confirmation order).

In the Bankruptcy Case, the Debtor failed to maintain insurance on the Camaro, despite the Confirmation Order's requirement that the Debtor be "responsible for the preservation and protection of all property of the estate not transferred to the trustee." In addition, her failure to maintain insurance violated the loan agreement between the Debtor and Shreveport FCU (the "Loan Agreement") (POC #5). While it is true secured creditors generally bear the risk of depreciating collateral, the Court must protect secured creditors' interests when there is severe and unexpected depreciation in the value of collateral due to a debtor's neglect or abusive behavior. Situations such as this are why § 1329(b)(1) applies the requirements of § 1325(a) to post-confirmation modification. Shreveport FCU should not have to bear the brunt of the loss because the Debtor failed to satisfy her duty. The Debtor's failure to comply with the Confirmation Order and the Loan Agreement by maintaining insurance on the Camaro constitutes a lack of good faith as required by § 1325(a)(3) and § 1329(b)(1). *See Butler*, 174 B.R. at 48-49. Consequently, the Court finds that the Motion to Modify does not satisfy the requirements of § 1329, and, therefore, should be denied.

## Conclusion

For the above and foregoing reasons, the Court concludes that the Motion to Modify should be denied. The Court holds that a debtor may modify a confirmed plan by surrendering collateral and having any deficiency treated as an unsecured claim, provided the modification

complies with the requirements of § 1325(a)(3) and § 502(j). In the Bankruptcy Case, the Debtor's attempt to modify the plan by surrendering the Camaro to Shreveport FCU after failing to comply with the Confirmation Order and the Loan Agreement by not maintaining insurance on the Camaro constituted a lack of good faith. As a result, the Motion to Modify should be denied for failing to satisfy § 1325(a)(3), which is applied to post-confirmation modification through § 1329(b)(1). Consequently, because the Debtor's attempt to reclassify Shreveport FCU's claim is rejected, the remaining part of the Motion to Modify should be rendered moot.

IT IS, THEREFORE, ORDERED that the Motion to Modify in order to surrender the Camaro and treat any deficiency as an unsecured claim is hereby denied.

IT IS FURTHER ORDER that the remaining part of the Motion to Modify is hereby denied as moot.

SO ORDERED.